**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 9, 2015
Date Decided: June 11, 2015

David J. Weidman, Esquire
Sergovic, Carmean &Weidman, P.A.
142 East Market Street
Georgetown, DE 19947

Richard L. Abbott, Esquire
Abbott Law Firm LLC
724 Yorklyn Road, Suite 240
Hockessin, DE 19707

Re: *Seabreeze Homeowners Association, Inc. v. Marshall Jenney, et al.*
Civil Action No. 8635-VCG

Dear Counsel:

In 2011, the homeowners' association of Seabreeze subdivision sued the Respondent, Marshall Jenney, in an attempt to force him to remove vegetation which it asserted was growing in violation of deed restrictions on the Jenney property. The property consists of two lots, a bay-front parcel and the adjacent inland parcel in a subdivision, Seabreeze, fronting Rehoboth Bay near Dewey Beach. Jenney settled that litigation on December 21, 2012 by agreeing contractually to trim the foliage on his properties (the "Settlement Agreement"), but, allegedly, Jenney failed to comply with the Settlement Agreement. On June

11, 2013, the Petitioner, Seabreeze Homeowners Association, Inc.[1] (the "Homeowners") filed this action to specifically enforce the Settlement Agreement. This enforcement action, in turn, was settled by Jenney's entry into a consent stipulation that was entered as an Order of the Court on July 11, 2014 ("Stipulation and Order"), again requiring Jenney to trim his foliage, with the work to be completed by October 31, 2014. Since that time, this litigation has involved an ongoing effort by the Petitioner to enforce the terms of that Stipulation and Order. Remaining at issue is the trimming of foliage on the bay-front parcel. Notwithstanding the rather limited nature of this case, it has become the most actively litigated on my docket.

Currently before me is a request by Jenney and his wife, Erin C. Jenney, recently added as a party respondent, for a stay of my June 1, 2015 Order directing that the Respondents comply with the Stipulation and Order by trimming the foliage in question by June 30, 2015. This Order implemented rulings made on May 21, 2015, following a site visit with a court reporter and arborist, at which the parties agreed on the extent of the trimming necessary to comply with the

---

[1] According to the Respondents, this entity is not the same homeowners' association that brought the initial action.

Stipulation and Order. The stay is sought in light of an appeal of various Court orders in this matter to our Supreme Court.[2]

Both parties rely on the four factor test for consideration of such a stay set out in *D.F. Rich Company v. Gray*.[3] Those factors are (1) the perceived likelihood of success on appeal, (2) whether the movant faces irreparable harm absent a stay, (3) the harm to other interested parties should the stay be granted, and (4) whether the stay is in the public interest. I evaluate this matter under those factors as follows.

I first consider the likelihood of success on appeal. The issues presented on appeal are difficult to glean from the Notice of Appeal filed by the Respondents. As I understand the appeal, it appears that only the Jenneys' argument that I improperly denied a Rule 60 Motion to Vacate has any bearing on the action this Court has directed the Respondents to take by June 30, 2015: the trimming of the foliage.[4] The Motion to Vacate involved whether the Stipulation and Order, entered by Mr. Jenney with the advice of counsel, is enforceable; the Jenneys

[2] The addition of Mrs. Jenney as a party respondent is one of my Orders currently on appeal. That Order was the result of an attempt by Jenney to avoid the foliage trimming called for in the Stipulation and Order by a sham transfer of the property in question to Mrs. Jenney, his wife.

[3] 2006 WL 3872830 (Del. Ch. Dec. 15, 2006).

[4] As noted, one of the Orders on appeal involves my grant of the Homeowners' motion to join Mrs. Jenney. That Order was entered after Mr. Jenney undertook a transfer of the properties in question to Mrs. Jenney in an attempt to avoid the Stipulation and Order. She is now a record owner of the property that the Homeowners seek to have trimmed in vindication of the Settlement Agreement and the Stipulation and Order. I find it unlikely that the appeal of that Order bears on the trimming work to be completed by June 30, but, in any event, it is unclear to me on what grounds the joinder of Mrs. Jenney could be found improper under Court of Chancery Rule 19, and this issue, in my view, is unlikely to find success on appeal.

contend, on various grounds, that it is not. This argument, in my estimation, is unlikely to be successful on appeal. Jenney's primary argument is that he would have prevailed on the merits of the Homeowners' deed restriction and specific performance claims, but instead agreed to an unfavorable settlement on the incompetent advice of counsel. If true, this may give rise to a malpractice claim, but is insufficient grounds to set aside a court order based on a stipulation in vindication of a contractual obligation. He also pointed out that the Settlement Agreement lists the former name of the homeowners association for Seabreeze, while this action is brought under the current name; Jenney argues that this makes the attempt to enforce the Settlement Agreement by the Homeowners fraudulent. I find that contention unlikely to prevail on appeal as well.

Next I turn to the second and third factors, the relative harms involved in either issuing, or declining to issue, a stay. If my refusal to vacate is reversed on appeal after the Jenneys have complied with my order directing specific performance by June 30, the Jenneys will have needlessly trimmed their foliage. This involves some quantum of threatened irreparable harm. On the other hand, a stay—improvidently granted—would frustrate the exercise of their property rights by the other property owners in the Seabreeze subdivision, also involving some quantum of irreparable harm. Neither the Petitioner nor the Respondents will

4

suffer overwhelming harm, in either case. Finally, threatened harm to the public is nil.

In sum, I am left with an unlikely appeal and offsetting, and minimally substantial, competing harms. Under these circumstances, the exercise of my discretion in favor of a stay is not warranted. I note that the Homeowners have been attempting for over seven months to enforce the Stipulation and Order for trimming trees and bushes which, by its terms, was to be completed by October 31, 2014. Accordingly, the Respondents' request for a stay is DENIED. To the extent the foregoing requires an order to take effect, IT IS SO ORDERED.

I next turn to the fees and costs incurred by the Homeowners in responding to the sham transfer of the property, which I found a vexatious litigation tactic. I shifted attorney fees under the vexatious litigation exception to the American rule on attorney fees, under which each party bears its own fees, win or lose. I directed the attorney for the Homeowners to file an affidavit of fees and costs incurred solely in response to the sham transaction, including bringing a rule to show cause for contempt,[5] and I gave the Respondents the opportunity to oppose the amount of fees sought. In objection, the Respondents took issue with the characterization of the transfer to Mrs. Jenney by the Homeowners as a "fraudulent transfer," asserting that "no one has yet to produce one shred of legal authority supporting the

---

[5] *See* Oral Arg. Tr. (May 21, 2015) 27:16–28:5.

5

proposition that a transfer of real property from a husband to his wife in order to end the harassing and seemingly never-ending acts by the Petitioner was anything other than legal and permissible," and argued that because Mrs. Jenney was added as a party respondent, the motion for contempt related to that transfer was moot and thus, any fees awarded should exclude time spent on that motion.[6] I found, however, that the transfer itself was a vexatious litigation tactic and was a contemptuous attempt to avoid enforcement of the Stipulation and Consent Order; whether or not the effects of the transfer have been minimized by my finding that Mrs. Jenney should be joined to this action is irrelevant to that finding. In other words, the response to the fee affidavit was an attempt to reargue my decision to shift a limited amount of fees, and not, as I had directed, an objection to the quantum of fees requested by the Homeowners. I find that the Petitioner's requested fees are reasonable and comply with my Order on May 21, 2015. This letter is accompanied by a form of order directing Respondents to pay the Petitioner's fees and costs in the amount of $3,750.00.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[6] Resp'ts' Resp. to Pet'r's Aff. for Att'y's Fees at 2.

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

SEABREEZE HOMEOWNERS )
ASSOCIATION, INC., )
       )
          Petitioner, )
       )
v. ) C.A. No. 8635-VCG
       )
MARSHALL JENNEY, )
       )
          Respondent. )

## ORDER

AND NOW, this 11th day of June, 2015,

The Court having considered the Petitioner's Affidavit for Attorney's Fees and the June 9, 2015 response thereto, IT IS HEREBY ORDERED that

Petitioner is awarded attorney's fees in the amount of $3,750.00 for work performed by Petitioner's counsel relating to the Respondent's conveyance of properties located at 317 Salisbury Street and 318 Salisbury Street in Rehoboth Beach, Delaware.

SO ORDERED:

/s/ Sam Glasscock III

Vice Chancellor